IN THE NEBRASKA COURT OF APPEALS

**MEMORANDUM OPINION AND JUDGMENT ON APPEAL**

STATE V. GENTRY

NOTICE: THIS OPINION IS NOT DESIGNATED FOR PERMANENT PUBLICATION
AND MAY NOT BE CITED EXCEPT AS PROVIDED BY NEB. CT. R. APP. P. § 2-102(E).

STATE OF NEBRASKA, APPELLEE,
V.
MATTHEW M. GENTRY, APPELLANT.

Filed October 22, 2013.    No. A-12-949.

Appeal from the District Court for Lancaster County: PAUL D. MERRITT, JR., Judge. Affirmed.

Dennis R. Keefe, Lancaster County Public Defender, and Elizabeth D. Elliott for appellant.

Jon Bruning, Attorney General, and Melissa R. Vincent for appellee.

MOORE, PIRTLE, and BISHOP, Judges.

BISHOP, Judge.

Matthew M. Gentry appeals from the decision of the district court for Lancaster County that, after a jury trial, convicted him of one count of first degree sexual assault, aggravated offense. We affirm.

FACTUAL BACKGROUND

J.L. testified that on the evening of January 13, 2012, she was celebrating her birthday with a friend. At around 8 p.m., J.L. and her friend went to a bar and J.L. had a martini. They then walked to a second bar, arriving around 9 p.m. Over the next few hours, J.L. consumed five or six drinks. At 11:45 p.m., while still at the second bar, J.L. was joined by Christine Davidson and Davidson's cousin, S.N. Shortly after midnight, J.L., Davidson, and S.N. went to a third bar, where J.L. consumed five or six shots of alcohol. J.L. testified that when they left the third bar, her state of intoxication was "at a 10" on a scale of 1 to 10. After leaving the third bar, J.L. asked Davidson and S.N. to take her home. Davidson wanted to "keep partying" and offered to let J.L. sleep at her apartment. Before they went to Davidson's apartment, the three women stopped at a

- 1 -

fast-food restaurant to order food. A receipt showed the food was ordered at 1:21 a.m. on January 14.

When J.L., Davidson, and S.N. arrived at Davidson's apartment, Davidson's boyfriend and Gentry were already there. J.L. testified that she had never met Gentry before. While Davidson, her boyfriend, S.N., and Gentry engaged in conversation, J.L. sat on the couch and ate her food. When J.L. finished eating, Davidson showed her to the spare bedroom, which contained a sectional couch. J.L., who was wearing a dress, a sweater, a body-shaping garment, tights, and a pair of boots, removed only her boots before lying down to go to sleep. Sometime around 4 or 5 a.m., J.L. woke to find a male, later identified as Gentry, on top of her. J.L. testified that she was lying on her stomach. When she woke, her tights and body-shaping garment were "pulled down below [her] knees and [Gentry] was on top of . . . behind [her]" having sex with her. She specifically stated that "[h]is penis was in my vagina." J.L. testified that she was still drunk and that when she realized what was happening, she started to get up and said, "'I don't even know who you are.'" She also thinks she said, "'Get off of me. . . .'" According to J.L., Gentry removed his penis from her vagina and then ejaculated on her inner thigh.

J.L. sat up as Gentry was pulling up his pants. When J.L. again stated, "'I don't even know who you are,'" Gentry said he was the best friend of Davidson's boyfriend and then walked into the bathroom across the hall. When he returned, Gentry handed J.L. a towel and suggested that she wipe herself off. He also pointed to a spot on the couch and said, "'There's blood there.'" Gentry then cleaned the spot off the couch.

Davidson awoke when she heard voices outside of her bedroom. When Davidson entered the spare bedroom, Gentry went to the living room. When Davidson asked J.L. what happened, J.L. stated, "'Someone that I don't even know just had sex with me.'" Davidson offered to call the police, but J.L. declined because Gentry was still in the apartment. Gentry left shortly thereafter. Around 8 a.m. on January 14, 2012, J.L. woke S.N. and asked for a ride home.

Later that morning, J.L. called the police to report the incident with Gentry. The officer gave J.L. a ride to a hospital, where she was examined by a certified sexual assault nurse examiner. During the examination, the nurse took swabs of J.L.'s groin, inner thigh, and vaginal and anal cavities and sent the swabs to a laboratory for analysis. The vaginal swab tested positive for semen, and Gentry could not be excluded as the source. The nurse also examined J.L.'s genitalia and observed a "fresh" quarter-inch tear in J.L.'s posterior fourchette, i.e., the lower rim of the entry of the vagina. The nurse testified that the tear could have been caused by consensual sex.

While J.L. was at the hospital, several members of the Lincoln Police Department went to Davidson's apartment to interview witnesses and collect evidence. An officer also went to J.L's apartment to collect the clothing she was wearing at the time of the assault. A stain on the sweater she had been wearing tested positive for semen, and Gentry could not be excluded as the source.

On January 29, 2012, Gentry agreed to be interviewed by an investigator. According to Gentry, his encounter with J.L. on January 14 was consensual. Gentry testified that he first met J.L. on January 14. According to Gentry, he engaged J.L. in a brief conversation and she did not

slur her words. He testified that J.L. was not drunk. J.L. went to the spare bedroom to lie down. Gentry testified that at around 3:30 a.m., he went to see if J.L. was "okay," meaning that he went to see if she was interested in having sex with him. Gentry thought she might be interested in having sex because earlier in the living room she had been smiling and giggling and being "flirtatious, like non-verbally." Gentry said that he massaged J.L.'s back and that she made "erotic sounds" and tried to "nudge up closer" to him. Gentry said that he tried to put his hands under her shirt and that J.L. moved so that her shirt could go "up a little bit farther." Gentry testified that he tried to remove J.L.'s tights and body-shaping garment, but had difficulty, so J.L. stood up and removed them herself. Gentry testified that he removed his pants, put on a condom, and tried to have sex with J.L. Gentry testified that he had difficulty getting his penis into J.L.'s vagina, so J.L. used her hands to guide Gentry's penis into her vagina. Gentry testified that before orgasm, he removed his condom and ejaculated on J.L.'s stomach. He testified that he went across the hall to a bathroom, flushed the condom, and took a towel back to J.L. so that she could clean up. Gentry noticed a spot of blood on the couch, which he tried to clean up. Gentry said that J.L. helped him clean the couch. Gentry testified that he then sat in the room with J.L. and that they talked. Gentry testified that Davidson then came in the room and wanted to talk to J.L. Later, Davidson came and told Gentry that he needed to leave. Gentry called a cab and left. Gentry testified that J.L. was not drunk, that he did not force J.L. to have sex, and that J.L. never said "no."

Davidson, her boyfriend, and S.N. testified as to J.L.'s condition at Davidson's apartment on January 14, 2012. Davidson's boyfriend testified that J.L. was drunk. S.N. testified that J.L. was "really intoxicated." Davidson testified that J.L. was in a "pretty high" state of intoxication. Both S.N. and Davidson testified that when they got to Davidson's apartment, J.L. did not talk to anyone. They said J.L. just sat on the couch and ate her food.

## PROCEDURAL BACKGROUND

The State charged Gentry with one count of first degree sexual assault, aggravated offense, a Class II felony.

Before trial, the State filed a notice of intent to offer evidence, pursuant to Neb. Rev. Stat. § 27-414 (Cum. Supp. 2012), of similar offenses committed by Gentry. At a hearing to consider the § 27-414 issues, testimony was received from S.N., who had contact with Gentry 2 months prior to the assault against J.L.

S.N. said that on one evening in November 2011, she was drinking at Davidson's apartment with Davidson, her boyfriend, and Gentry. S.N. had never met Gentry before that evening. S.N. testified that she was intoxicated and "passed out" on the couch in Davidson's spare bedroom. S.N. was wearing jeans and a T-shirt. S.N. testified that when she woke up, her shirt was off, her pants were unbuttoned, and Gentry was grabbing her breasts and "trying to have sex" with her. S.N. testified that when she told Gentry to stop, he stopped. S.N. never reported the incident. S.N. testified that she encountered Gentry again on New Year's Eve and that on that evening, they had consensual sex.

The trial court found clear and convincing evidence that Gentry had subjected S.N. to nonconsensual sexual contact in November 2011. The court found that although S.N. was not

subjected to first degree sexual assault, there were "significant" similarities between the act against S.N. and the act with which Gentry was charged. The court found:

> Without limitation, these include the following: The sexual assaults occurred on the couch in . . . Davidson's spare bedroom; J.L. and [S.N.] were each intoxicated and passed out on the couch; both J.L. and [S.N.] woke up to discover that their clothing had been removed and/or altered; and, when they woke up, each of them testified that [Gentry] was present, sexually assaulting them.

The court also found that the probative value of the admission of the evidence relating to the sexual assault of S.N. in November 2011 outweighed any prejudicial effect that may be caused by the admission of the evidence. The court found that evidence relating to the November 2011 sexual assault of S.N. was admissible at trial.

After a trial, the jury found Gentry guilty of first degree sexual assault, aggravated offense. The trial court accepted the jury's verdict. Gentry was later sentenced to 15 to 20 years' imprisonment, with 254 days' credit for time served. Gentry has timely appealed his conviction and sentence to this court.

## ASSIGNMENTS OF ERROR

Gentry assigns that (1) the district court improperly admitted evidence of a "similar crime" under § 27-414, (2) there was insufficient evidence to support his conviction, and (3) the district court imposed an excessive sentence.

## STANDARD OF REVIEW

In proceedings where the Nebraska Evidence Rules apply, the admissibility of evidence is controlled by the Nebraska Evidence Rules; judicial discretion is involved only when the rules make discretion a factor in determining admissibility. *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012). Where the Nebraska Evidence Rules commit the evidentiary question at issue to the discretion of the trial court, an appellate court reviews the admissibility of evidence for an abuse of discretion. *Id.*

When reviewing a criminal conviction for sufficiency of the evidence to sustain a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McGee*, 282 Neb. 387, 803 N.W.2d 497 (2011). And whether the evidence is direct, circumstantial, or a combination thereof, the standard is the same: An appellate court does not resolve conflicts in the evidence, pass on the credibility of witnesses, or reweigh the evidence; such matters are for the finder of fact. *Id.*

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

ANALYSIS

*Evidence of Similar Crime.*

Gentry asserts that the district court improperly admitted evidence of a "similar crime" under § 27-414 because the crime was not similar enough, the evidence was more prejudicial than probative, and the evidence could have confused the jury about which case was being tried.

In relevant part, § 27-414 provides:

> (1) In a criminal case in which the accused is accused of an offense of sexual assault, evidence of the accused's commission of another offense or offenses of sexual assault is admissible if there is clear and convincing evidence otherwise admissible under the Nebraska Evidence Rules that the accused committed the other offense or offenses. If admissible, such evidence may be considered for its bearing on any matter to which it is relevant.
>
> . . . .
>
> (3) Before admitting evidence of the accused's commission of another offense or offenses of sexual assault under this section, the court shall conduct a hearing outside the presence of any jury. At the hearing, the rules of evidence shall apply and the court shall apply a section 27-403 balancing and admit the evidence unless the risk of prejudice substantially outweighs the probative value of the evidence. In assessing the balancing, the court may consider any relevant factor such as (a) the probability that the other offense occurred, (b) the proximity in time and intervening circumstances of the other offenses, and (c) the similarity of the other acts to the crime charged.

And Neb. Rev. Stat. § 27-403 (Reissue 2008) states: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

The trial court followed the procedure of the statute and conducted a hearing outside the presence of the jury. At the hearing, S.N. testified that in November 2011--2 months prior to the sexual assault of J.L.--Gentry subjected S.N. to nonconsensual sexual contact. The court found by clear and convincing evidence that Gentry had subjected S.N. to nonconsensual sexual contact. The court found that although S.N. was not subjected to first degree sexual assault, there were "significant" similarities between the two acts. The court found:

> Without limitation, these include the following: The sexual assaults occurred on the couch in . . . Davidson's spare bedroom; J.L. and [S.N.] were each intoxicated and passed out on the couch; both J.L. and [S.N.] woke up to discover that their clothing had been removed and/or altered; and, when they woke up, each of them testified that [Gentry] was present, sexually assaulting them.

The court also found that the probative value of the admission of the evidence relating to the sexual assault of S.N. in November 2011 outweighed any prejudicial effect that may be caused by the admission of the evidence.

The trial court properly considered all factors in determining whether evidence of a prior sexual assault may be admitted. The court considered the probability that the other offense occurred, the proximity in time and intervening circumstances of the other offenses, and the

similarity of the other acts to the crime charged. Accordingly, the trial court did not abuse its discretion in admitting evidence of Gentry's commission of a "similar crime" against S.N. See *State v. Kibbee*, 284 Neb. 72, 815 N.W.2d 872 (2012).

*Sufficiency of Evidence.*

Gentry asserts there was insufficient evidence to support his conviction. When reviewing a criminal conviction for sufficiency of the evidence to sustain a conviction, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *State v. McGee*, 282 Neb. 387, 803 N.W.2d 497 (2011).

The evidence supports a conviction for first degree sexual assault under Neb. Rev. Stat. § 28-319(1) (Reissue 2008). Under § 28-319(1),

> [a]ny person who subjects another person to sexual penetration (a) without the consent of the victim, (b) who knew or should have known that the victim was mentally or physically incapable of resisting or appraising the nature of his or her conduct . . . is guilty of sexual assault in the first degree.

As defined by Neb. Rev. Stat. § 28-318(8) (Cum. Supp. 2012), the term "without consent" means:

> (a)(i) The victim was compelled to submit due to the use of force or threat of force or coercion, or (ii) the victim expressed a lack of consent through words, or (iii) the victim expressed a lack of consent through conduct, or (iv) the consent, if any was actually given, was the result of the actor's deception as to the identity of the actor or the nature or purpose of the act on the part of the actor;
>
> (b) The victim need only resist, either verbally or physically, so as to make the victim's refusal to consent genuine and real and so as to reasonably make known to the actor the victim's refusal to consent; and
>
> (c) A victim need not resist verbally or physically where it would be useless or futile to do so[.]

Gentry does not dispute that he subjected J.L. to sexual penetration on January 14, 2012, but he claims he did so with J.L.'s consent.

As stated previously, J.L. testified she had between 11 and 13 alcoholic drinks during the evening hours of January 13, 2012, and into the early morning hours of January 14. She testified that when she left the third bar, her state of intoxication was "at a 10" on a scale of 1 to 10. After returning to Davidson's apartment, J.L. fell asleep in a spare bedroom. She testified that sometime around 4 or 5 a.m., she woke to find Gentry, on top of her. Her tights and body-shaping garment were "pulled down below [her] knees and [Gentry] was on top of . . . behind [her]" having sex with her. She specifically stated that "[h]is penis was in my vagina." J.L. testified that she was still drunk and that when she realized what was happening, she started to get up and said, "'I don't even know who you are.'" She also thinks she said, "'Get off of me. . . .'"

Contrary to J.L.'s testimony, Gentry testified that J.L. was not drunk. But J.L.'s testimony was supported by Davidson, her boyfriend, and S.N., all of whom testified that J.L. was "drunk," in a "pretty high" state of intoxication, or "really intoxicated." Davidson and S.N.

- 6 -

also contradicted Gentry's testimony that he engaged in a conversation with J.L. before she went to sleep in the spare bedroom.

Whether Gentry subjected J.L. to sexual penetration (a) without her consent, or (b) when he "knew or should have known that [J.L.] was mentally or physically incapable of resisting or appraising the nature of her conduct" is a question of fact to be determined by the jury. See § 28-319(1). Viewing the evidence in the light most favorable to the prosecution, the jury could have found the essential elements of the crime beyond a reasonable doubt. See *State v. McGee*, 282 Neb. 387, 803 N.W.2d 497 (2011). Accordingly, there was sufficient evidence to support Gentry's conviction for first degree sexual assault.

We take a moment to note the sexual assault was charged as an aggravated offense, the penalty for which includes lifetime community supervision by the Office of Parole Administration, pursuant to Neb. Rev. Stat. § 83-174.03(1)(c) (Cum. Supp. 2012). For purposes of the Sex Offender Registration Act, the term "aggravated offense" includes "any registrable offense under section 29-4003 which involves the penetration of . . . (a) a victim age thirteen years or older without the consent of the victim" or "(c) a victim who the sex offender knew or should have known was mentally or physically incapable of resisting or appraising the nature of his or her conduct." Neb. Rev. Stat. § 29-4001.01(1) (Cum. Supp. 2012). Sexual assault pursuant to § 28-319 is a registrable offense under Neb. Rev. Stat. § 29-4003 (Cum. Supp. 2012). As stated previously, the evidence adduced at trial showed that Gentry subjected J.L. to penetration without her consent or when he knew or should have known that J.L. was mentally or physically incapable of resisting or appraising the nature of her conduct. Thus, the criteria for an "aggravated offense" were met in the instant case.

*Excessive Sentence.*

Gentry asserts that the district court imposed an excessive sentence. Factors a judge should consider in imposing a sentence include the defendant's age, mentality, education, experience, and social and cultural background, as well as his or her past criminal record or law-abiding conduct, motivation for the offense, nature of the offense, and the amount of violence involved in the commission of the crime. *State v. Williams*, 282 Neb. 182, 802 N.W.2d 421 (2011).

Gentry was 29 years old at the time of the crime and 30 at the time of sentencing. He had obtained his diploma through the GED program and was employed at a manufacturing plant. Gentry's adult criminal history dates back to 1999. His convictions include attempted second degree forgery, making a false statement to a police officer (three times), possession of marijuana less than 1 ounce (two times), driving under suspension (three times), conspiracy to distribute cocaine, and aiding and abetting. Gentry's convictions for conspiracy to distribute cocaine and aiding and abetting resulted in a federal prison sentence followed by a term of supervised release. Gentry was still on supervised release at the time he assaulted J.L. With regard to the current offense, Gentry sexually assaulted J.L. while she was unconscious due to the effects of alcohol.

A sentence imposed within statutory limits will not be disturbed on appeal absent an abuse of discretion by the trial court. *State v. Williams, supra*. And it is the minimum portion of an indeterminate sentence which measures its severity. *State v. Nevels*, 235 Neb. 39, 453 N.W.2d

579 (1990). Gentry was convicted of one count of first degree sexual assault under § 28-319(1), a Class II felony. The statutory sentencing range for a Class II felony is 1 to 50 years' imprisonment. Neb. Rev. Stat. § 28-105 (Cum. Supp. 2012). Gentry was sentenced to 15 to 20 years' imprisonment and was given 254 days' credit for time served. His sentence is in the low to middle range of the permissible sentencing range. Having considered the relevant factors in this case, we find that the sentence is not excessive or an abuse of discretion, and we affirm such sentence.

CONCLUSION

For the reasons stated above, we affirm Gentry's conviction and sentence.

AFFIRMED.